**Steve NORTHRUP, Appellant,**

v.

**FARMLAND INDUSTRIES, INC., Appellee.**

No. 84–906.

Supreme Court of Iowa.

July 31, 1985.

J.R. Norris of J.R. Norris & Associates, Cedar Rapids, for appellant.

John R. Carpenter and Iris E. Muchmore of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

LARSON, Justice.

The plaintiff, Steve Northrup, was fired by Farmland Industries, Inc., and this suit followed, alleging wrongful discharge and tortious infliction of emotional distress. Summary judgment was entered for the employer, and Northrup appealed, arguing that summary judgment was inappropriate because there were disputed facts surrounding the discharge.

The employer responded that summary judgment was proper, even if disputed

facts existed. It claimed our civil rights statute, Iowa Code chapter 601A, provides the exclusive remedy for wrongful discharge based on alcoholism. As to plaintiff's claim for infliction of emotional distress, the required "outrageous conduct" was lacking as a matter of law, according to its argument. We agree with the employer on both issues and therefore affirm the entry of summary judgment.

 Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). The burden of showing the nonexistence of a material fact is upon the moving party. *Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984); *Colonial Baking Co. v. Dowie*, 330 N.W.2d 279, 282 (Iowa 1983). Every legitimate inference that reasonably can be deduced from the evidence should be afforded the resisting party, and a fact question is generated if reasonable minds can differ on how the issue should be resolved. *Henkel v. R & S Bottling Co.*, 323 N.W.2d 185, 187–88 (Iowa 1982). With these principles in mind, we look to the record before the court in the summary judgment action.

Northrup was employed at Farmland Industries from September 27, 1977, through July 26, 1982. At the time of his termination, he was plant superintendent, responsible for operations, safety, production scheduling, and quality control.

On March 22, 1982, Northrup's wife left him. He called Ed Haney, his supervisor, and requested the rest of the week off. Haney agreed. Northrup later requested the following week off as well, and this request was also granted. At some time, either during this second week or shortly thereafter, Northrup spoke with a doctor who recommended that he submit to alcohol rehabilitation treatment. Northrup called Haney to inform him that he needed alcohol treatment and would be gone for a month. The record indicates this was the first indication Farmland had that Northrup had a drinking problem. Sick leave with pay was granted.

At the end of April, 1982, Northrup left the treatment center a few days prior to "graduation," because he was worried about his continued employment at Farmland. On his return, he had a meeting with Haney, who expressed dissatisfaction with his job performance. He warned Northrup that any further mistakes could cost him his job. Northrup also testified that Haney yelled at him, telling him he was not going to tolerate much more, and accused him of misconduct. Northrup felt that Haney was "mad at him" for his leave of absence.

On July 26, 1982, Northrup's employment with Farmland was terminated. Northrup contends this termination was the result of his alcoholism and his participation in the alcohol treatment program. Farmland, on the other hand, maintains Northrup was terminated for poor job performance.

Northrup filed complaints with the Cedar Rapids Civil Rights Commission and the Iowa Civil Rights Commission, claiming that he had been harassed on the job and that his termination was a direct result of his alcohol disability. On January 20, 1983, the Iowa Civil Rights Commission issued an "Administrative Release and/or Right-to-Sue Letter" pursuant to Iowa Code section 601A.16 (1983). The notice advised plaintiff, pursuant to statute, he had "a right to commence an action in the State District Court within ninety (90) days of the issue date of this Administrative release/letter of right-to-sue, or within one year after the filing of the complaint, whichever occurs first." Plaintiff filed this petition against Farmland ninety-one days later. (He concedes his petition is not timely under the civil rights act, Iowa Code ch. 601A.)

## I. *The Wrongful Discharge Claim.*

 The general rule is that an at-will employee may be terminated at any time, for any reason. *See Abrisz v. Pulley Freight Lines, Inc.*, 270 N.W.2d 454, 455 (Iowa 1978); *Harper v. Cedar Rapids Television Co.*, 244 N.W.2d 782, 791 (Iowa

1976); *Allen v. Highway Equipment Co.*, 239 N.W.2d 135, 139 (Iowa 1976).

Northrup concedes that he is an employee at will and that he would be precluded from recovery for wrongful discharge under the general rule. However, he argues that a discharge for alcoholism is against public policy and that, when an employee's discharge violates public policy, the general rule of no liability is subject to an exception.

This court has never expressly recognized a public-policy exception, although we recently noted its increasing acceptance in other jurisdictions. *See Abrisz*, 270 N.W.2d at 455. *See also Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081, 1088 n. 1 (1984) (listing jurisdictions recognizing this exception); Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith*, 93 Harv.L.Rev. 1816, 1822–24 (1980).

While we hinted in *Abrisz* that, under proper circumstances, we would recognize a common-law claim for a discharge violating public policy, we did not apply it there because the facts did not establish such a violation. We observed, moreover, that "[c]ourts should not declare conduct violative of public policy unless it is clearly so." *Abrisz*, 270 N.W.2d at 456. It has been observed, in fact, that successful common-law claims for wrongful discharge have been based in large part on violations of independent statutory policy, not those established by court decisions. *See* Note, *Protecting At-Will Employees, supra*, 93 Harv.L.Rev. at 1822–23.

Looking to our own statutes, we find an express policy prohibiting discharges for "disabilities." Iowa Code section 601A.6 (1983) provides in part:

1. It shall be an unfair or discriminatory practice for any:

 *a.* Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the age, race,

creed, color, sex, national origin, religion or disability of such applicant or employee, unless based upon the nature of the occupation.

Section 601A.2(11) provides this definition of disability:

*"Disability"* means the physical or mental condition of a person which constitutes a substantial handicap. In reference to employment, under this chapter, "disability" also means the physical or mental condition of a person which constitutes a substantial handicap, but is unrelated to such person's ability to engage in a particular occupation.

In our recent case of *Consolidated Freightways, Inc. v. Cedar Rapids Civil Rights Commission*, 366 N.W.2d 522, 527 (Iowa 1985), we held that alcoholism can be a "disability" under language virtually identical to section 601A.2(11). It is thus clear that a person discharged solely because of alcoholism may pursue a remedy under chapter 601A. The question remains, however, whether the remedy under chapter 601A is exclusive, as Farmland argues, or merely an alternative remedy, as argued by Northrup.

Iowa Code section 601A.16(1) provides: A person claiming to be aggrieved by an unfair or discriminatory practice *must* initially seek an administrative relief by filing a complaint with the commission in accordance with section 601A.15. A complainant *after the proper filing of a complaint with the commission*, may subsequently commence an action for relief in the district court if all of the following conditions have been satisfied:

*a.* The complainant has timely filed the complaint with the commission as provided in section 601A.15, subsection 12; and

*b.* The complaint has been on file with the commission for at least one hundred twenty days and the commission has issued a release to the complainant pursuant to subsection 2 of this section.

(Emphasis added.)

Section 601A.16(3) provides that:

An action authorized under this section is barred unless commenced within ninety days after issuance by the commission of a release under subsection 2 of this section or within one year after the filing of the complaint, whichever occurs first. If a complainant obtains a release from the commission under subsection 2 of this section, the commission shall be barred from further action on that complaint.

■ It is clear from a reading of section 601A.16(1) that the procedure under the civil rights act is exclusive, and a claimant asserting a discriminatory practice must pursue the remedy provided by the act. Only after a release has been given by the commission may a complainant commence suit; then suit must be commenced within ninety days of the release or within one year after filing the complaint, whichever occurs first. Iowa Code § 601A.16(3) (1983) (This section now appears without the alternative one-year limitation period. *See* Iowa Code § 601A.16(3) (1985)). This suit was not filed within either the ninety-day or one-year limitation. In fact, Northrup has abandoned his chapter 601A claims in favor of a totally independent, common-law action.

■ We believe that any remedies to which Northrup may be entitled would lie solely under chapter 601A and his independent common-law action cannot be recognized. The district court was correct in so ruling.

II. *The Claim of Tortious Infliction of Emotional Distress.*

Northrup claims a second ground for recovery. He asserts that the actions of the employer constituted a tortious infliction of emotional harm, a claim recognized by the Restatement and several of our cases. *See, e.g., Vinson v. Linn-Mar Community School District*, 360 N.W.2d 108, 118 (Iowa 1984); *Harsha v. State Savings Bank*, 346 N.W.2d 791, 801 (Iowa 1984); *Powell v. Khodari-Intergreen Co.*, 334 N.W.2d 127,

129 (Iowa 1983); Restatement (Second) of Torts § 46(1) (1965).

The elements of this tort are:

(1) Outrageous conduct by the defendant;

(2) The defendant's intentional causing, or reckless disregard of the probability of causing emotional distress;

(3) Plaintiff has suffered severe or extreme emotional distress; and

(4) Actual proximate causation of the emotional distress by the defendant's outrageous conduct.

*Vinson*, 360 N.W.2d at 118; *Powell*, 334 N.W.2d at 129.

(Although our cases have referred to this claim as an "intentional infliction of emotional distress," neither the Restatement nor our cases actually require proof of an intentional act; a "reckless disregard of the probability of causing" emotional distress is enough. *See*, Restatement (Second) of Torts § 46; *Vinson*, 360 N.W.2d at 118; *Harsha*, 346 N.W.2d at 800; *Powell*, 334 N.W.2d at 129. In view of this, we will simply refer to the claim as a "tortious" infliction of emotional distress.)

Farmland has responded to this claim in two ways: First, it asserts Northrup's pleading is insufficient to raise it and second, as a matter of law, there was no "outrageous conduct" on the part of Farmland.

■ A. *The Pleading Issue.* The standard by which the sufficiency of a pleading is measured is whether it provides "fair notice" of the claim asserted so as to allow the adverse party an opportunity to make an adequate response. *Schmidt v. Wilkinson*, 340 N.W.2d 282, 283 (Iowa 1982); *Gosha v. Woller*, 288 N.W.2d 329, 331 (Iowa 1980). *See* Iowa R.Civ.P. 69(a). With this standard in mind, we look to the contents of Northrup's petition.

Count I alleged breach of an employment contract, proximate cause, and damages. Count II incorporated the above allegations of Count I and further alleged that the termination "was in bad faith and in violation of defendant's duty of good faith and

fair dealing with respect to the plaintiff's contract of employment." Count III incorporated Count II and further alleged the termination "was in reckless disregard of causing emotional harm." Count IV alleged malice and demanded punitive damages.

■ The petition asserted three of the four elements of tortious infliction of emotional distress: Reckless disregard of causing emotional harm, proximate cause, and damages. Although he did not expressly allege the fourth element, "outrageous conduct," we believe the petition when taken as a whole gave fair notice of the tortious interference claim and was therefore sufficient under rule 69(a).

B. *The "Outrageous Conduct" Element.* The defendant argues that, even if the claim for tortious infliction of emotional distress was properly pled, there was no "outrageous conduct" on its part.

We have said that the "outrageous conduct" in this context is "so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community...." *Vinson,* 360 N.W.2d at 118, quoting *Harsha,* 346 N.W.2d at 801.

The Restatement highlights the egregiousness required to elevate (or downgrade) mere bad conduct to the level of outrageousness:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
>
> Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46 comment d.

■ It is for the court to determine in the first instance, as a matter of law, whether the conduct complained about may reasonably be regarded as outrageous. *Vinson,* 360 N.W.2d at 118; *Roalson v. Chaney,* 334 N.W.2d 754, 756 (Iowa 1983). In making that determination, we take the evidence in the light most favorable to Northrup.

He testified that, in his opinion, he had been fired for alcoholism. For summary judgment purposes, we must assume this is true. Northrup's duties included plant operations, buying, production scheduling, maintenance, and, perhaps most significantly, plant safety. Discharge of a plant superintendent for alcoholism, when he has such extensive responsibilities, does not exceed "all possible bounds of decency" nor could it be expected to cause an average member of the community to exclaim "Outrageous!" under the Restatement test.

Northrup does not seem to rely on any other circumstances to show outrageousness; he continues to point to the fact of his alcoholism, and the public policy implications of a discharge based on it. He did, however, testify about certain acts by his supervisor prior to, and at the time of, his discharge. The supervisor had "yelled" at him, told him he would not tolerate any more of Northrup's behavior, suggested that he had falsified some "documents" and accused him of lying. The supervisor also criticized Northrup's feed production scheduling and finally told him he was "fed up" with him.

The general criticism of Northrup by the supervisor does not appear to be anything unusual in an employer-employee relationship. In considering the question whether conduct was "outrageous" for these purposes, a reasonable level of tolerance is required. We have said that

> [t]he tort law should encourage a certain level of emotional toughness. "The

rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Restatement (Second) of Torts § 46, comment d, *supra*. "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033, 1035 (1936).

*Meyer v. Nottger*, 241 N.W.2d 911, 918 (Iowa 1976).

Testimony by Northrup that his supervisor accused him of lying and falsifying "documents" might appear to be more serious than the general allegations of friction. Northrup's brief comments about these matters in his deposition, however, were not developed by him. In fact, when pressed he said he did not know anything about the basis for these statements and that he did not make any inquiry about them. He does not assert the statements were outrageous, or even that they were untrue.

In *Vinson*, we considered an employer-employee relationship with considerably "rougher edges" than what we find here. In *Vinson*, we said an allegation of an ongoing intentional campaign of harassment by a supervisor, including an accusation of falsifying time records, was insufficient as a matter of law to constitute outrageousness. We concluded that

> [e]ven though we believe a jury could find defendants engaged in a deliberate campaign to badger and harass plaintiff, we do not believe their conduct rises to the level of extremity essential to support a finding of outrageousness. The jury could find that defendants' actions were petty and wrong, even malicious, but we do not believe a trier of fact could reasonably conclude that the conduct

went beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

*Vinson*, 360 N.W.2d at 119.

 We believe Northrup's discharge for alcoholism, even considering these additional circumstances, could not reasonably be considered to be outrageous conduct under the rule.

We find no basis for reversal.

AFFIRMED.

All Justices concur except REYNOLDSON, C.J., who concurs specially.

REYNOLDSON, Chief Justice (concurring specially).

I concur specially because I still am not convinced the legislature intended that alcoholism should immunize an at-will employee from discharge, as this decision implies.