**Dorothy WESTIN, Plaintiff,**

v.

**MERCY MEDICAL SERVICES, INC., an Iowa Corporation, d/b/a Marian Medical Services, Inc., and Mercy Health Services, a Michigan Corporation, f/k/a Sisters of Mercy Health Corporation d/b/a Marian Health Center, Defendants.**

**No. C 97–4051–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

Feb. 12, 1998.

Irene Schrunk of Al Sturgeon Law Firm, Sioux City, IA, for Plaintiff.

Maureen B. Heffernan of Berenstein, Moore, Moser, Berenstein & Heffernan, L.L.P., Sioux City, IA, for Defendants.

**ORDER REGARDING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)**

BENNETT, District Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ...................................1052

II. STANDARDS FOR SUMMARY JUDGMENT.................................1053
    A. General Standards For Summary Judgment ...........................1053
    B. Cautions In Employment Discrimination And Retaliation Cases .........1054

III. FINDINGS OF FACT .............................................1055
    A. Facts Drawn From The Complaint ..................................1055
    B. Facts Related To Question Of Jurisdiction ...........................1055

IV. LEGAL ANALYSIS ...............................................1056
    A. Preemption Of State Common Law Claims............................1056
    B. Timeliness Of Westin's ICRA Claim ................................1058
        1. Filing requirements under the Iowa Civil Rights Act ................1058
        2. Equitable tolling doctrine ......................................1059

V. CONCLUSION ...................................................1060

A central issue raised in the motion for summary judgment currently before the court evokes the bard's observation in King Henry VI: "Defer no time, delays have dangerous ends." WILLIAM SHAKESPEARE, KING HENRY VI, PART I, Act III, scene ii, line 33. It is uncontested that plaintiff failed to file her claims of discrimination under the Iowa Civil Rights Act within ninety days of the issuance of the administrative release, as required by Iowa Code § 216.16(3). The court is called upon here to determine, *inter alia*, whether plaintiff's delay in bringing her discrimination claims will result in "dangerous ends" for those claims.

## I. INTRODUCTION AND BACKGROUND

Plaintiff Dorothy Westin filed her complaint in this lawsuit on June 11, 1997, against her former employers, defendants Mercy Medical Services, Inc. and Mercy Health Services, Inc. Westin, who was fifty-five years of age at the time she filed her complaint in this case and suffers from an undisclosed vision problem, alleges in her complaint that she was terminated because of her age and disability. Westin asserts claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., the Iowa Civil Rights Act ("ICRA"), Iowa Code Ch. 216, and two pendent state law claims. Specifically, in Count I, Westin alleges that she is a qualified individual with a disability—a vision problem—and that defen-

dants terminated her because of that disability, in violation of the ADA, 42 U.S.C. § 12102(2)(A). The complaint further asserts, in Count II, that age was a determining factor in her termination in violation of the ADEA, 29 U.S.C. § 623. In Count III, the complaint alleges that defendants violated the Iowa Civil Rights Act, Iowa Code § 216.6, by terminating Westin's employment because of her age and disability. Westin alleges in Count IV that defendants' actions give rise to a supplemental state law claim for tortious discharge in violation of public policy. Finally, in Count V, Westin alleges that defendants' behavior toward her constitutes intentional infliction of emotional distress. Before filing her complaint in this case, plaintiff Westin filed an identical action in the Iowa District Court for Woodbury County on May 30, 1997.

On July 14, 1997, defendants filed their Motion To Dismiss Or Stay/Alternative Motion To Dismiss Pursuant to Federal Rule of Civil Procedure 12(b). In their motion, defendants argued that the court should stay or dismiss this case pursuant to the *Colorado River* abstention doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In the alternative, defendants asserted that Westin's pendent state law claims for tortious discharge in violation of public policy and intentional infliction of emotional distress should be dismissed for failure to state a claim. On August 13, 1997, defendants filed their Supplemental Motion To Dismiss

Or Stay/Alternative Motion To Dismiss Pursuant to Federal Rule of Civil Procedure 12(b). In their supplemental motion, defendants reassert all the contentions raised by their original motion and also assert that Westin's state discrimination claims should be dismissed for failure to state a claim upon which relief may be granted. Defendants assert that Westin's claim is barred by her failure to file her complaint in this case within ninety days of the issuance of the administrative release, as required by Iowa Code § 216.16(3).

The court heard oral arguments on the parties' motions on September 18, 1997. At oral argument the court informed counsel that it would accept additional briefing on those portions of defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b) for failure to state a claim upon which relief may be granted.[1] As a result, the court deferred ruling on those portions of defendants' motions until after the parties' additional briefing had been submitted. Westin was required to file an accompanying affidavit in support of her position which provides an explanation for why the right-to-sue letter could not have been delivered to her in March of this year. On October 9, 1997, Westin filed a supplemental brief on the issue of whether the court may retain jurisdiction over her ICRA claims. The gist of Westin's supplemental brief is that, because she did not receive an initial right-to-sue letter, the doctrine of equitable tolling should have extended the 90–day time period for filing a discrimination suit until after she had actually received the letter. The court subsequently ordered the parties to submit further briefs solely on the issue of whether the doctrine of equitable tolling is applicable in this case. The parties have now submitted their supplemental briefs in this case, along with supporting documents.

Where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule

56." FED.R.CIV.P. 12(b)(6). Here, both parties have now submitted material outside the pleadings in support of their respective positions. Therefore, on December 31, 1997, the court notified the parties that the court would treat defendants' motions to dismiss as motions for summary judgment under Federal Rule of Civil Procedure 56. The court permitted the parties ten days in which to file such documents and materials permitted under Federal Rule of Civil Procedure 56 and any supplemental briefs the parties desired to file on the issues raised by defendants' respective motions. No further materials have been submitted by any of the parties.

The court turns first to the standards applicable to motions for summary judgment. The court will next turn to the factual background of this case as set forth in the complaint and the supporting documents filed with the court, and then to a legal analysis of whether any of Westin's claims must be dismissed.

## II. STANDARDS FOR SUMMARY JUDGMENT

### A. General Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED.R.CIV.P. 56 in a number of recent decisions. *See, e.g., Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Center,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here.

---

1. On September 19, 1997, the court concluded that based on its analysis of the six *Colorado River* factors, insufficient grounds to warrant abstention had been presented in this case. Thus, the court denied that portion of defendants' Mo-

tion To Dismiss Or Stay/Alternative Motion To Dismiss Pursuant to Federal Rule of Civil Procedure 12(b) and Supplemental Motion To Dismiss Or Stay/Alternative Motion To Dismiss Pursuant to Federal Rule of Civil Procedure 12(b).

Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(b) & (c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). "An issue of material fact is genuine if it has a real basis in the [summary judgment] record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 395.

### B. Cautions In Employment Discrimination And Retaliation Cases

When summary judgment is sought in an employment discrimination case, however, the Eighth Circuit Court of Appeals has viewed such motions with caution. The court has often stated that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing

*Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1204–05, 1997 WL 634571, *2 (8th Cir. Oct.16, 1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir.1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364). Consequently, summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244).

Furthermore, this court has observed that motions for summary judgment in retaliation cases should be viewed with similar caution. Thus, in *Delashmutt v. Wis–Pak Plastics, Inc.*, 990 F.Supp. 689, 693 * (N.D.Iowa 1998), this court wrote,

These special cautions seem to the court to be no less applicable here to Delashmutt's retaliation ... claim[ ], because such claims also often depend upon inferences of the employer's motive, as is shown by application of the same burden-shifting analysis to retaliation claims as is used in discrimination cases[.] *[S]ee Moschetti v. Chicago, Central & Pacific R. Co.*, 119 F.3d 707, 709 (8th Cir.1997) ("The order and allocation of the burden of proof in [a retaliation case under 42 U.S.C. § 2000e–3(a) ] is laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *accord Manning*

*v. Metropolitan Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir.1997); *Jackson v. Delta Special Sch. Dist. No. 2,* 86 F.3d 1489, 1494 (8th Cir.1996)[.]"

*Delashmutt,* 990 F.Supp. at 693. Therefore, the court will keep these cautions in mind when considering defendants' motion for summary judgment on Westin's retaliation claims as well.

Nonetheless, there are also limits to caution, because the Eighth Circuit Court of Appeals has said that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow,* 128 F.3d at 1204–05, 1997 WL 634571 at *2; *accord Helfter,* 115 F.3d at 615; *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 762 (8th Cir.1995). Therefore, with these standards in mind, the court turns to consideration of defendants' motions for summary judgment.

### III. FINDINGS OF FACT

#### A. Facts Drawn From The Complaint

According to the complaint, Westin is a fifty-five year old woman who suffers from an undisclosed visual impairment. Westin is a licensed social worker ("LSW") and has been awarded a master's degree in social work ("MSW"). In 1986, Westin was hired by defendants as a psychiatric social worker. At the time of her discharge on April 26, 1996, Westin held the position of LSW–Psychiatric Social Worker.

Early in 1996, Westin was informed that defendants were "restructuring," and that the three existing LSW–Psychiatric Social Worker positions would be reduced to two positions. Westin was told she was eligible to apply for one of the two positions. Defendants created a new job description for the LSW–Psychiatric Social Worker position which required two years of clinical experience in any of three patient groups. Westin had the requisite experience to qualify for the LSW–Psychiatric Social Worker position. Defendants, however, required Westin to meet two other job requirements not imposed on the other candidates for the LSW–Psychiatric Social Worker position. First, Westin was required to have two years of post-graduate clinical experience while the other candidates were not required to have post-graduate clinical experience. Second, Westin was required to have two years of post-graduate experience in each of the three population groups, for a total of six years of experience. The other applicants were permitted to meet the new requirements for the LSW–Psychiatric Social Worker position with a total of two years of experience among any of the three population groups. Westin met both of these additional requirements for the LSW–Psychiatric Social Worker position. However, on April 26, 1996, Westin was laid-off by defendants on the grounds that she did not have two years of post-graduate experience in child patient populations.

Westin was informed by defendants that if future LSW–Psychiatric Social Worker positions became available she would be considered "a preferential rehire." Since April 26, 1996, defendants have had at least three comparable positions become available. Westin informed defendants that she was ready, willing, and able to return to work. Westin was not hired for any of these positions. Defendants filled the comparable positions with applicants who were younger, non-disabled, and who possessed qualifications inferior to those of Westin.

#### B. Facts Related To Question Of Jurisdiction

Plaintiff Westin has supplied affidavits in support of her resistance to defendants' motion to dismiss her ICRA claims on the ground of lack of jurisdiction. The court has extracted the following facts, all uncontroverted, from those affidavits which relate to the service of the Iowa Civil Rights Commission's right-to-sue notice on Westin.

On March 7, 1997, the Iowa Civil Rights Commission mailed a closure letter and administrative release to Westin at her current address by certified mail. Westin's address has not changed since she filed her complaint of discrimination with the Iowa Civil Rights Commission. Westin's residence has a mailbox which Westin checks on a daily basis. Westin's address is classified as a rural route. As a result of this classification, the United States Postal Service will not personally deliver certified or registered mail to her home. Instead, the postal service leaves small notice slips in her mailbox to notify her of certified mail to be delivered or picked up. Westin, who is visually impaired, uses her sense of touch to locate mail in her mail box. She has a person come to her home regularly to read her mail to her. In March 1997, Westin never received or became aware of notice slips in her mail box. On Saturday, April 5, 1997, the person who reads Westin's mail to her informed Westin that she had certified mail to be picked up at the Post Office. On Monday, April 7, 1997, Westin went to the Post Office to pick up her certified mail. Westin, however, was informed that the certified mail had been returned to the sender. Westin then contacted her attorney, and he placed a call to the Iowa Civil Rights Commission to ascertain the nature of the certified mail sent to Westin. Westin learned that the items sent to her by certified mail would be sent to her by regular mail. On April 6, 1997, Westin received a closure letter and administrative release from the Iowa Civil Rights Commission.[2]

## IV. LEGAL ANALYSIS

Defendants have moved to dismiss Westin's supplemental state law claims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants assert that Westin's state common law claims for tortious discharge in violation of public policy and intentional infliction of emotional distress are preempted by the ICRA, Iowa Code Chapter 216. Defendants further contend that Westin's claim under the ICRA is barred because it was not filed within ninety

days of issuance of the right-to-sue letter. The court will address each of these arguments seriatim.

### A. Preemption Of State Common Law Claims

■ Defendants contend that both of Westin's state common law claims for tortious discharge in violation of public policy and intentional infliction of emotional distress are preempted by the ICRA. The ICRA, Iowa Code Chapter 216, established the Iowa Civil Rights Commission and provides statutory remedies for enforcement of basic civil rights. *Greenland v. Fairtron Corp.*, 500 N.W.2d 36, 37 (Iowa 1993). The Iowa Supreme Court has held that section 216.16(1) renders the chapter's remedies exclusive and preemptive. *Greenland*, 500 N.W.2d at 37; *Grahek v. Voluntary Hosp. Co-op. Ass'n of Iowa, Inc.*, 473 N.W.2d 31, 33 (Iowa 1991); *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 197 (Iowa 1985). Preemption occurs unless the claims are separate and independent, and therefore incidental, causes of action. *Greenland*, 500 N.W.2d at 38; *Grahek*, 473 N.W.2d at 34; *Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 639 (Iowa 1990). The claims are not separate and independent when, under the facts of the case, success on the claim not brought under chapter 216 requires proof of discrimination. *Greenland*, 500 N.W.2d at 38.

The Iowa Supreme Court has addressed the preemption issue in only a handful of cases. In *Northrup*, the Iowa Supreme Court held that the ICRA provided the exclusive remedy for alleged wrongful discharge for alcoholism and the plaintiff's independent common-law action for wrongful discharge could not be recognized. *Northrup*, 372 N.W.2d at 197. However, the court went on to entertain the plaintiff's claim that his discharge for alcoholism constituted intentional infliction of emotional distress. *Id.* at 197–99. The court concluded that discharge of a plant superintendent for alcoholism, when the superintendent has extensive responsibilities for plant operations, buying,

---

**2.** The court notes that Iowa Civil Rights Commission Compliance Officer Norma J. Bowley avers in her affidavit that the closure letter and the administrative release were mailed to Westin on April 10, 1997.

production scheduling, maintenance, and plant safety, was not outrageous conduct, nor was general criticism of the superintendent's performance outrageous. *Id.* at 198.

The Iowa Supreme Court subsequently clarified its holding in *Northrup* in *Hamilton v. First Baptist Elderly Housing Foundation,* 436 N.W.2d 336. In *Hamilton,* the plaintiff alleged discharge of an at-will employee in violation of public policy, but the court found that her argument "basically boil[ed] down to an assertion of sex discrimination." *Id.* at 341. The court concluded that *Northrup* held that the civil rights statute preempts independent common law actions also premised on discrimination. *Id.* The court stated that "[plaintiff] failed in her bid to prove sex discrimination. *Northrup* forbids her a second bite of the apple in the form of an independent common law action also premised on sex discrimination." *Id.* at 341–42.

In *Vaughn,* 459 N.W.2d 627, the Iowa Supreme Court held that the trial court properly dismissed as preempted by the ICRA claims of wrongful discharge, unfair employment practices, and termination in bad faith and actual malice because all were based on religious discrimination. *Vaughn,* 459 N.W.2d at 639. However, the court held that a claim of breach of contract was not preempted, because it was a separate and independent cause of action triable to a jury. *Id.* at 639.

The Iowa Supreme Court next addressed the question of preemption in *Grahek,* 473 N.W.2d 31. The court held that a breach of contract claim was not preempted by the civil rights statute even when the plaintiff believed that he was fired because of his age because

> [plaintiff] need not prove [discrimination] to be successful in his contract claim. In this count he is claiming that the employment contract was breached by his premature termination in violation of the terms of the alleged contract. The claim of age discrimination is only incidental to the separate and independent cause of action for breach of contract.

*Grahek,* 473 N.W.2d at 34. However, the court distinguished wrongful discharge claims based on at-will employment from the one encountered by the plaintiff alleging breach of an employment contract, noting that "in an at-will situation, either party may terminate the employment at any time for any reason except discrimination under chapter 601A or violation of public policy." *Id.* The court concluded that

> [s]ince in at-will employment situations involving allegations of discrimination the claim of wrongful discharge and the claim of discrimination are one and the same, Iowa Code section 601A.16 requires that the employee follow the procedures provided in that chapter.

*Id.* The court did find that the plaintiff's breach of implied covenant of good faith and fair dealing claims were preempted because

> the only act of bad faith which [plaintiff] alleges is age discrimination. Thus, as in at-will employment arrangements, the bad faith claim and the chapter 601A civil rights claim are the same. Therefore, chapter 601A preempts the tort claim.

*Id.* The court found that claims of fraudulent and negligent misrepresentation, which were not based on unfair or discriminatory practices, but on earlier acts, were not preempted. *Id.* at 35.

In its most recent pronouncement on the subject, the Iowa Supreme Court held that a claim of intentional infliction of emotional distress was preempted by the ICRA because the plaintiff had to prove sexual discrimination to be successful on the emotional distress claim. *Greenland,* 500 N.W.2d at 38. The court held that the test is whether, in light of the pleadings, discrimination is made an element of the alternative claims. *Id.* The court concluded that:

> We think the answer with regard to the emotional distress claim is yes, resulting in preemption. Discrimination through sexual harassment is the "outrageous conduct" [plaintiff] specifically alleges in her claim for intentional infliction of emotional distress. So under the facts she alleges, if she were to fail in her claim of discrimination, [plaintiff] would necessarily fail in her claim of intentional infliction of emotional distress. Stated otherwise, it is impossible for [plaintiff] to establish the emotional

distress she alleges without first proving discrimination. *Id.* The court also addressed the apparent inconsistency between this holding and the *Northrup* decision in which the court had entertained an emotional distress claim based on termination for alcoholism after concluding that the plaintiff had a viable claim under 601A for discrimination on the basis of alcoholism. *Northrup*, 372 N.W.2d at 197–99. . In *Greenland*, the Iowa Supreme Court noted that contrary to the plaintiff's contentions, the decisions in *Vaughn* and *Northrup* did not implicitly allow separate claims for intentional infliction of emotional distress in conjunction with the ICRA discrimination claims, because preemption of the emotional distress claims was never raised or considered in either appeal. *Greenland*, 500 N.W.2d at 38.

■ In the present case, Westin has brought claims of age and disability discrimination under the ICRA. She has also asserted common-law tort claims for tortious discharge in violation of public policy and intentional infliction of emotional distress. Both of Westin's common-law claims appear from the complaint to be based entirely on the same conduct Westin has alleged was discriminatory. In Count IV, Westin's claim for tortious discharge in violation of public policy, the complaint states in relevant part:

45. Plaintiff was visually impaired and more than 40 years of age.

46. The Defendants wrongfully and tortiously discharged Plaintiff because she was visually impaired and/or because she was more than 40 years of age.

47. The Defendants' discharge of Plaintiff because she was visually impaired and more than 40 years of age violated the public policy of the State of Iowa.

Compl. at ¶¶ 45–47. In Count V, Westin's claim for intentional infliction of emotional distress, she merely "repleads all preceding paragraphs as if fully set out herein." Compl. at ¶ 50.

In light of the authorities cited above, Iowa Code § 216.6 provides the exclusive remedy for these claims since they are both based in their entirety on the claimed discriminatory actions of defendants. Therefore, this portion of defendants' motion to dismiss is granted as to Count IV (tortious discharge in violation of public policy) and Count V (intentional infliction of emotional distress).

**B. Timeliness Of Westin's ICRA Claim**

**1. Filing requirements under the Iowa Civil Rights Act**

Iowa Code § 216.16(2) provides in pertinent part:

> Upon a request by the complainant, and after the expiration of one hundred twenty days from the timely filing of a complaint with the commission, the commission shall issue to the complainant a release stating that the complainant has a right to commence an action in the district court....

Iowa Code § 216.16(2). Section 216.16(3) provides in pertinent part:

> An action authorized under this section is barred unless commenced within ninety days after issuance by the commission of a release under subsection 2 of this section.

Iowa Code § 216.16(3).

■ In *Saemisch v. Ley Motor Co.*, 387 N.W.2d 357 (Iowa 1986), the Iowa Supreme Court considered the meaning of the words "issue to the complainant" and "after issuance by the commission" of a release-to-sue letter under the Iowa Civil Rights Act. IOWA CODE § 216.16(2) and (3). The plaintiff in *Saemisch* commenced his action under the Iowa Civil Rights Act within ninety days from the date he received his right-to-sue letter, but ninety-four days from the date the commission mailed the letter. *Id.* at 358. The Iowa Supreme Court held that the plaintiff's ninety days began to run on the date the letter was mailed to the plaintiff by certified mail. *Id.* at 359. In arriving at this conclusion, the court considered the dictionary definition of "issue," which is " 'to cause to appear or become available by officially putting forth or distributing or granting or proclaiming or promulgating.' " *Id.* at 358 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1201 (1969)). Thus, Westin's ninety days for filing suit under the Iowa Civil Rights Act began to run on March 7, 1997, the date the Iowa Civil Rights Commission mailed a closure letter and administrative release to Westin at her current address by certified mail. Westin was therefore required to file her lawsuit by June 5, 1997.

Westin did not file her complaint within that period, and therefore her cause of action is untimely. Because Westin's federal lawsuit was not filed until June 11, 1997, absent application of the doctrine of equitable tolling, Westin's claims under the Iowa Civil Rights Act must be dismissed.[3] *See Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1327 (8th Cir.1995) ("If a plaintiff fails to file a timely charge, the lawsuit is barred unless he or she can demonstrate that the limitations period is subject to equitable modification such as waiver, estoppel, or tolling.").

### 2. Equitable tolling doctrine

■ The concept of equitable tolling is "appropriate only when the circumstances that cause a plaintiff to miss a filing deadline are out of his hands." *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266 (8th Cir.1990) (citing *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir.1989)), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *accord Salois v. Dime Sav. Bank of N.Y., FSB*, 128 F.3d 20, 25 (1st Cir.1997) (quoting *Heideman*, 904 F.2d at 1266); *Kelley v. N.L.R.B.*, 79 F.3d 1238, 1248 (1st Cir. 1996) (same); *Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 489 (8th Cir.1992) (same); *Lown v. Brimeyer*, 956 F.2d 780, 781 (8th Cir.) (same), *cert. denied*, 506 U.S. 860, 113 S.Ct. 176, 121 L.Ed.2d 122 (1992). Equitable tolling is permissible in situations other than those in which some positive misconduct occurs on the part of the defendant against whom it is asserted. *See Bell v. Fowler*, 99 F.3d 262, 266 n. 2 (8th Cir.1996); *Dring*, 58

F.3d at 1327; *Anderson v. Unisys Corp.*, 47 F.3d 302, 306 (8th Cir.1995); *see also Browning v. AT&T Paradyne*, 120 F.3d 222, 226 (11th Cir.1997); *Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir.1991); *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 878 (5th Cir.), *cert. denied*, 502 U.S. 868, 112 S.Ct. 198, 116 L.Ed.2d 158 (1991); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1990), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991); *State of N.Y. v. Sullivan*, 906 F.2d 910, 917 (2d Cir. 1990). As the Eighth Circuit Court of Appeals observed in *Anderson:*

> In *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984), the Supreme Court outlined several circumstances that may justify equitable tolling of a limitations period. These include cases:
>
> in which a claimant has received inadequate notice . . . ; or where a motion for appointment of counsel is pending . . . ; or where the court has led the plaintiff to believe that she had done everything required of her . . . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.

*Anderson*, 47 F.3d at 306; *accord St. Louis v. Texas Worker's Compensation Comm'n*, 65 F.3d 43, 47 (5th Cir.1995), *cert. denied*, 518 U.S. 1024, 116 S.Ct. 2563, 135 L.Ed.2d 1080 (1996); *Lavery v. Marsh*, 918 F.2d 1022, 1027 (1st Cir.1990).[4]

■ Westin fails to make a showing sufficient to invoke equitable tolling under *Brown*.[5] The administrative release or

---

3. Because plaintiff Westin filed an identical action in the Iowa District Court for Woodbury County on May 30, 1997, she will be able to litigate her claims under the Iowa Civil Rights Act in that forum regardless of the court's determination here.

4. In *Anderson*, the plaintiff received a letter from the Minnesota Department of Human Rights in response to his inquiry about filing an administrative charge that stated the plaintiff had one year from the date of the discriminatory action to file a charge with the Minnesota Department of Human Rights. *Anderson*, 47 F.3d at 306. The letter also informed the plaintiff that if his charge alleged a violation of federal law, the Minnesota Department of Human Rights would also file it with the EEOC. *Id.* The letter did not mention that the EEOC filing deadline was 300 days rather than one year. *Id.* The plaintiff claimed that

because the letter misled him to believe that the EEOC filing deadline was also one year, the court should equitably toll the filing deadline. *Id.* The Eighth Circuit Court of Appeals agreed finding the letter sufficient to equitably toll the statutory limitations period:

> We conclude the [Minnesota Department of Human Rights'] representation that the deadline was one year would lead a reasonable person to believe that the represented deadline governed the filing of both the federal and state administrative charges. On that basis, we find the letter sufficient to equitably toll the federal limitations period in this case.

*Id.* at 307.

5. In *Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196, the United States Supreme Court examined the standards governing the applicabil-

right-to-sue letter from the Iowa Civil Rights Commission was clear, straightforward, and easy to understand. The right-to-sue letter told Westin what she was required to do in order to preserve her claim. The record indicates that Westin is an intelligent, educated woman, and easily capable of comprehending the time limits set out in the administrative release. When Westin received the right-to-sue letter from the Iowa Civil Rights Commission on April 6, 1997, she still had fifty days in which to commence her lawsuit. Westin offers no explanation for why this was not sufficient time in which to bring her lawsuit here. Indeed, Westin was able to file a timely lawsuit in Iowa District Court for Woodbury County on May 30, 1997. She, however, did not file her identical federal lawsuit until June 11, 1997. Westin's counsel advised the court that the decision to file in federal court was made only after she realized that her client could obtain a jury trial on her state law claims in this forum. Thus, Westin could have filed her complaint in federal court at the same time she filed her state court petition. The Eighth Circuit Court of Appeals and other courts have clearly required a plaintiff seeking to invoke the doctrine of equitable tolling to act diligently in protecting her rights. *See Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 361 (8th Cir.1997) (" 'One who fails to act diligently cannot invoke equitable principles to excuse

that lack of diligence.' "; quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); in turn quoting *Brown*, 466 U.S. at 151); *see also Wilson v. Secretary, Dep't of Veterans Affairs*, 65 F.3d 402, 404 (5th Cir.1995) ("we 'have generally been much less forgiving in receiving late filings where the claimant failed to exercise diligence in preserving his legal rights.' "; quoting *Irwin*, 498 U.S. at 96); *St. Louis v. Texas Worker's Compensation Comm'n*, 65 F.3d 43, 47–48 (5th Cir. 1995) (" 'One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.' "; quoting *Irwin*, 498 U.S. at 96; in turn quoting *Brown*, 466 U.S. at 151), *cert. denied*, 518 U.S. 1024, 116 S.Ct. 2563, 135 L.Ed.2d 1080 (1996); *Hill v. United States Dep't of Labor*, 65 F.3d 1331, 1339 (6th Cir.1995) (same); *Scholar v. Pacific Bell*, 963 F.2d 264, 268 (9th Cir.) ("Courts have been generally unforgiving, however, when a late filing is due to claimant's failure 'to exercise due diligence in preserving his legal rights.' ") (quoting *Irwin*, 498 U.S. at 96), *cert. denied*, 506 U.S. 868 (1992); *Rao v. Baker*, 898 F.2d 191, 198 (D.C.Cir.1990) (" 'One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.' "; quoting *Brown*, 466 U.S. at 151); *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (same). Moreover, Westin's claimed reliance on counsel

---

ity of the doctrine of equitable tolling in a Title VII case. In *Brown*, the plaintiff had filed a complaint with the Equal Employment Opportunity Commission alleging discriminatory treatment by her former employer. *Id.* at 148. A notice of right to sue was issued to her on January 27, 1981. This notice required that suit be filed within ninety days. Later, plaintiff mailed the notice to the United States District Court, where it was received on March 17, 1981. She also requested appointment of counsel. *Id.* On June 9, 1981, the 130th day after the receipt of the right to sue letter, plaintiff filed an "amended complaint." *Id.* The District Court held that plaintiff had forfeited her right to pursue her Title VII claim because of her failure to file her complaint within 90 days of the receipt of the right to sue letter. *Id.* at 148–49. The court of appeals reversed, holding that the right to sue letter "tolls" the time period provided by Title VII. *Id.* at 149. The Supreme Court reversed, holding that the court's jurisdiction is not "tolled" by the filing of the right to sue letter. The Court further noted that there was nothing "in the record to call for the application of the

doctrine of equitable tolling." *Id.* at 151. In this regard, the court explained that:

> This is not a case in which a claimant has received inadequate notice, *see Gates v. Georgia–Pacific Corp.*, 492 F.2d 292 (9th Cir.1974); or where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, *see Harris v. Walgreen's Distribution Center*, 456 F.2d 588 (6th Cir.1972); or where the court has led the plaintiff to believe that she had done everything required of her, *see Carlile v. South Routt School District RE 3–J*, 652 F.2d 981 (10th Cir.1981). Nor is this a case where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction. *See Villasenor v. Lockheed Aircraft Corp.*, 640 F.2d 207 (9th Cir.1981).... The simple fact is that [plaintiff] was told three times what she must do to preserve her claim, and she did not do it. One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.

*Brown*, 466 U.S. at 151.

cannot excuse her failure to timely file suit when the reason offered for tolling is "at best a garden variety claim of excusable neglect." *Irwin,* 498 U.S. at 96; *accord Justice v. United States,* 6 F.3d 1474, 1479 (11th Cir. 1993) (" 'Principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect.' "; quoting *Irwin,* 498 U.S. at 96); *see Wilson,* 65 F.3d at 404 (holding counsel's inaction and unexplained failure to protect client's rights do not justify extending the limitations period); *Gilbert ex rel. Gilbert v. Secretary of Health & Human Servs.,* 51 F.3d 254, 257 (Fed.Cir.1995) (holding that "[t]he negligence of [the] attorney does not justify applying equitable tolling."). The court concludes that Westin's failure to heed the limitations period found in the right-to-sue letter constitutes insufficient grounds to invoke the doctrine of equitable tolling in this case. To conclude otherwise would trivialize the limitations period by a loose application of the doctrine of equitable tolling. Therefore, the court concludes that Westin's request for equitable tolling of the limitations period must be denied. Accordingly, the court grants defendants' motions as to Westin's ICRA claims.

## V. CONCLUSION

The court initially concludes that Iowa Code § 216.6 provides the exclusive remedy for Westin's claims for tortious discharge in violation of public policy and intentional infliction of emotional distress since they are both based in their entirety on the claimed discriminatory actions of defendants. Therefore, defendants' motions are granted as to count IV (tortious discharge in violation of public policy) and count V (intentional infliction of emotional distress). The court further concludes that Westin's claims under the Iowa Civil Rights Act were not filed in a timely fashion and Westin's request for equitable tolling of the limitations period is denied. Accordingly, the court grants defendants' motions as to Westin's ICRA claims and dismisses count III.

**IT IS SO ORDERED.**