**Kesha NUSS, Plaintiff,**

v.

**CENTRAL IOWA BINDING CORPORATION d/b/a American Business Phones, Defendant.**

No. 4:03–CV–40383.

United States District Court,
S.D. Iowa,
Central Division.

Sept. 24, 2003.

Gordon R. Fischer, Bradshaw Fowler Proctor & Fairgrove, De Moines, IA, for Plaintiff.

Barbara M. Tapscott, Pingel & Templer PC, West Des Moines, IA, for Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS

GRITZNER, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Clerk's No. 5). A hearing on this motion was held on September 12, 2003. Plaintiff Nuss was represented by Gordon Fischer; Defendant American Business Phones was represented by Barbara Tapscott. For the following reasons, Defendant's Motion to Dismiss is **granted** as to Count V portion related to disability discrimination, Count VII, and Count VIII, and **denied** as to Count II. Plaintiff's request for leave to amend Count II of its Petition is hereby **granted**.

## PROCEDURAL BACKGROUND

The Plaintiff, Kesha Nuss ("Nuss"), commenced this action against the Defendant, Central Iowa Binding Corporation, d/b/a American Business Phones ("ABP"), in the Iowa District Court for Polk County on or about June 25, 2003. The lawsuit contains eight claims arising out of ABP's termination of Nuss' employment. On July 10, 2003, pursuant to 28 U.S.C. § 1441(a) and LR 81.1, ABP removed the case to this court. Removal was based on federal question jurisdiction encompassed in 28 U.S.C. § 1331.

On July 18, 2003, ABP filed a motion to dismiss that seeks to eliminate some, but not all, of the claims asserted by Nuss in her petition. Of the eight counts in Nuss' Petition, ABP seeks to dismiss three claims in their entirety and a portion of a

fourth. Defendant's motion seeks to dismiss from this lawsuit the following claims: Count II—Fraud; Count V—Iowa Civil Rights Act (portion of claim related to disability discrimination); Count VII—Americans with Disabilities Act; and Count VIII—Wrongful Discharge.[1]

## BACKGROUND FACTS

Kesha Nuss, a resident of Madison County, Iowa, was employed in a sales position by American Business Phones. ABP is authorized to conduct business in the state of Iowa, and in fact conducts business in Polk County, Iowa. In her position as salesperson, Nuss was headquartered in Polk County, Iowa. Nuss' employment was eventually terminated by ABP, and this lawsuit arises out of the employment relationship and the subsequent discharge.

Nuss alleges that the parties entered into an oral contract in which she was made certain promises concerning compensation, commission, and benefits. She claims she was promised certain support for business development as well as compensation, commissions, and benefits paid pursuant to company policy. Nuss asserts these promises were not met by ABP even though she raised concerns about her compensation, commissions, and benefits during her employment. Specifically, Nuss alleges breach of oral contract[2] by ABP in "(a) refusing and failing to provide long term opportunities, promised to Nuss at the time of her hiring, including, but not limited to, future promotions; and (b) refusing and failing to pay compensation,

commissions, and benefits pursuant to company policy and promised to Nuss during the time of her employment."

ABP denies there was an oral contract between the parties, especially one obligating it to provide Nuss with long-term opportunities and future promotions. ABP maintains that Nuss was an at-will employee of the company.

Nuss further asserts in her fraud count that ABP's promises constitute misrepresentations and fraudulent inducements. She maintains these misrepresentations were intended to induce her to accept and maintain a position as salesperson with ABP and to perform her job to the best of her abilities. Nuss claims the misrepresentations were of material facts, that ABP intended to deceive her, and that she acted in reliance on these misrepresentations in accepting the position with ABP and working to the best of her abilities while employed by them.

Nuss also contends that she was discriminated against on the basis of her gender during her employment with ABP. She claims this discrimination came in the form of statements made by a co-owner of ABP, and in the form of giving priority for sales leads to male employees instead of to her. Some of the comments Nuss cites in her complaint for gender discrimination were that a co-owner stated it was "easier for a man to dress professionally than a woman," along with snide comments about "women and shopping."

---

1. The counts brought by Nuss that are not in issue as part of this motion are: Count I—Breach of Oral Contract; Count III—Iowa Wage Payment & Collection Act; Count IV—Fair Labor Standards Act; Count V—Iowa Civil Rights Act (portion of claim related to gender discrimination and retaliation); and Count VI—Title VII.

2. While not at issue in Defendant's motion to dismiss, Count I—Breach of Oral Contract is important to the contention that Nuss has failed to plead her fraud claim (Count II) with particularity. The purported fraud occurred as part of the oral contract Nuss claims was entered into by the parties. Thus, it is important to know what Nuss alleges in her complaint about the breach of the oral contract.

Nuss asserts that she complained of the disparate treatment she received. ABP admits that Nuss did approach ABP President Steve Huyette ("Huyette") and raised two concerns: (1) that Larry Collins, Sales Manager at ABP, was spending more time with a male sales consultant, Jason Metzger, than with her; and (2) that she was not being given as many call-in leads as Mr. Metzger. ABP maintains Huyette immediately investigated Nuss concerns.

On or about October 18, 2002, Nuss learned that her father was terminally ill with cancer. She states that she informed the co-owners of ABP of her father's illness that same day. She also informed them she would need time off as a result of her father's illness. ABP admits that Nuss advised the managers at ABP sometime prior to her departure that her father was ill but denies it had knowledge of his medical diagnosis. ABP contends it does not know whether Nuss specifically requested time off because of her father's condition. Nuss alleges that her relationship with her father and her stated need for time off due to his illness played a role in her termination by ABP.

Nuss' employment was terminated by ABP on or about October 20, 2002. Nuss has not been paid any compensation, commission, or benefits by ABP since her termination. She alleges that this is in violation of company policy as well as the promises she was made by ABP. Nuss claims that she was fired after she complained of the disparate treatment she received based on her gender.[3] In addition, Nuss asserts her termination was directly tied to her association with someone with a disability. Meanwhile, ABP contends Nuss was terminated for the legitimate and non-discriminatory reason of her failure to meet job expectations.

Nuss filed a civil rights complaint with the Iowa Civil Rights Commission ("ICRC") on or about March 24, 2003. This complaint ("original complaint") was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). The complaint alleged gender discrimination and retaliation. A right-to-sue letter was issued on or about June 19, 2003. This lawsuit was subsequently filed in Polk County, Iowa, prior to its removal to this court. On August 15, 2003, following the filing of Defendant's Motion to Dismiss, Nuss filed a new complaint ("amended complaint") with the EEOC in an attempt to amend her original complaint by adding discrimination due to her connection with a disabled person.

## ANALYSIS

### A. Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") allows the court to dismiss a cause of action for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). Motions under this rule "can serve a useful purpose in disposing of legal issues with a minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir.1968), *cert. denied,* 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). "The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims." *DeWit v. Firstar Corp.,* 879 F.Supp. 947, 959 (N.D.Iowa 1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94

---

**3.** In fact, this was the only reason Nuss gave in the complaint she filed with the Iowa Civil Rights Commission. There is no mention of disability discrimination playing a role in her discharge from ABP in the complaint filed with the ICRC. This claim seems to have been brought forth for the first time in Plaintiff's petition.

S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989).

In considering a motion to dismiss, the court must accept as true all of the plaintiff's allegations. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Concerned Citizens of Neb. v. United States Nuclear Reg. Comm'n,* 970 F.2d 421, 425 (8th Cir.1992). The court must also liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal under Rule 12(b)(6) is not warranted when based solely on a judge's disbelief of the plaintiff's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A court should review only the pleadings in addressing a motion to dismiss to determine whether they state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6); *DeWit,* 879 F.Supp. at 959. Using these articulated standards, the court now considers in turn each of the arguments made in support of Defendant's motion to dismiss.

## B. Motion to Dismiss as to Count II— Fraud

Nuss has asserted fraud as a cause of action in against ABP. Specifically, Nuss claims the promises made to her by ABP constitute misrepresentations and fraudulent inducements that were designed to induce her to accept the salesperson position and to perform her job at a certain level of ability. She also asserts that ABP's failure to deliver on its promises relating to certain compensation, commissions, and benefits constitutes misrepresentation. Nuss claims the misrepresentations were of material facts, that ABP intended to deceive her with these misrepresentations and induce her to accept the position of salesperson with ABP, and that she acted in reliance on these misrepresentations by accepting the position with ABP

and working to the best of her abilities while employed by them.

ABP has moved to dismiss this count for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). *See* Fed.R.Civ.P. 9(b). ABP contends Nuss has not pleaded with the required particularity in her Petition but has instead merely alleged broken promises. ABP argues these allegations are insufficient to withstand a motion to dismiss. Nuss counters that she has met the particularity requirement of Rule 9(b) by the plain language of her petition, which states Defendant promised long-term opportunities, specifically future promotions, at the time of her hiring.

Rule 9(b) imposes additional obligations on a party bringing a claim for fraud than those requirements stated in the notice pleading rule, Rule 8 of the Federal Rules of Civil Procedure. *DeWit,* 879 F.Supp. at 989 (citing *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547 (9th Cir.1994)). According to Rule 9(b), a claim for fraud must aver with particularity the circumstances purportedly constituting the fraud. *Brown v. North Central F.S. Inc.,* 987 F.Supp. 1150, 1155 (N.D.Iowa 1997). "Under the rule, allegations of fraud in a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* These have been described as "time, place, and content" requirements. *Id.* (citing *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d at 1547).

Therefore, when pleading fraud, the plaintiff must aver the circumstances constituting fraud with particularity. *Commercial Prop., Inv., Inc. v. Quality Inns Int'l,* 61 F.3d 639, 644 (8th Cir.1995). The Eighth Circuit has found "circumstances" to include matters such as " "the

time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Id.* (quoting *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982)). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* Scienter, however, may be pleaded in conclusory fashion with the caveat that the party pleading fraud "'must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading.'" *Id.* (quoting *Lucia v. Prospect Street High Income Portfolio, Inc.,* 36 F.3d 170, 174 (1st Cir.1994)). *See also Brown,* 987 F.Supp. at 1156 (finding that even though under Rule 9(b) certain conditions of the mind such as malice, intent, and knowledge may be averred generally, there is still a heightened requirement to allege facts making it reasonable to believe defendants knew that their statements were false or misleading at the time they were made).

■ To show fraud in Iowa, a plaintiff needs to establish the following elements: "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, (7) resulting injury and damage." *Robinson v. Perpetual Servs. Corp.,* 412 N.W.2d 562, 565 (Iowa 1987). In Iowa, a person's statement of intent to perform a future act is actionable *only if* that person had an intent not to perform *at the time* the statement was made. *Id.See also Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.,* 111 F.3d 1386, 1393 (8th Cir.1997); *Int'l Travel Arrangers v. NWA, Inc.,* 991 F.2d 1389, 1402 (8th Cir.1993).

■ A mere broken promise is not actionable as long as the promise is made in good faith and with the expectation of carrying out that promise. *Magnusson Agency v. Pub. Entity Nat'l Co.—Midwest,* 560 N.W.2d 20, 28–29 (Iowa 1997);

*Robinson,* 412 N.W.2d at 565; *Irons v. Cmty. State Bank,* 461 N.W.2d 849, 854 (Iowa Ct.App.1990). Prosser expounds on this in his treatise on the law of torts stating:

> Unless the present state of mind is misstated, there is no misrepresentation. When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit, or equitable relief. Otherwise any breach of contract would call for such a remedy. The mere breach of a promise is never enough in itself to establish the fraudulent intent. It may, however, be inferred from the circumstances, such as the defendant's insolvency or other reason to know that he cannot pay, or his repudiation of the promise soon after it is made, with no intervening change in the situation, or his failure even to attempt any performance, or his continued assurances after it is clear that he will not do so.

W. Prosser, *The Law of Torts* § 109, at 730–31 (4th ed.1971). Thus, without some showing of an intent not to perform at the time a promise is made, a pleading of fraud necessarily fails under Rule 9(b) for not meeting the particularity requirement.

■ On its claim against ABP for fraud, Plaintiff's petition specifically alleges the following:

> 20. ABP's promises to Nuss constitute misrepresentations and fraudulent inducements designed to induce Nuss to accept the position of salesperson and to perform her job to the best of her estimable abilities. Furthermore, ABP promised to provide certain compensation, commissions, and benefits to Nuss, and did not, which also constitutes misrepresentations.
>
> 21. The misrepresentations were of material facts.

22. ABP intended to deceive Nuss with these misrepresentations and fraudulently induce her to accept the position of salesperson and to preform her job. Nuss acted in reliance upon these misrepresentations by accepting the position and working to the best of her estimable abilities.

This is the extent of Nuss' pleadings with regard to her fraud claim. She argues these meet the "time, place, and content" requirements of Rule 9(b). However, because she bases her claims of fraud on breach of an oral contract or broken promises, Nuss must also plead facts of ABP's knowledge at the time the promises were made that ABP would not fulfill the promises made. "[P]leadings of fact from which inferences of an intention not to perform could also arise would include evidence that ... the defendant ... fail[ed] even to attempt any performance." *Brown*, 987 F.Supp. at 1158.

Nuss argues that because Plaintiff summarily terminated her, ABP failed even to attempt any performance. Based on this, Nuss expects the Court to infer ABP knew it would not perform at the time the promises were made. The Court will not make this logical leap. Nuss needs to plead more for the Court to accurately make such an inference. This can be accomplished through the "time, place, and content" requirements and by setting forth the specific circumstances of the alleged fraud, such as who spoke the promises, what promises were made, when the promises were made, how the speaker knew the statements made were untrue, and any additional facts tending to show an intent not to perform those promises at the time they were made. Nuss has not done this; instead, she has simply made generalized allegations in her petition as to time, place, and content. Even taking as true all of Nuss' contentions, the Court cannot find that she has pleaded fraud with sufficient particularity to comply with Rule 9(b).

The purpose of the heightened pleading standard encompassed in Rule 9(b) is to provide the defendant with notice sufficient for the defendant to provide an adequate answer. *DeWit*, 879 F.Supp. at 989. Based on this, courts have been reluctant to dismiss completely a claim of fraud for failure to plead with particularity as required by Rule 9(b). Instead, courts have allowed plaintiffs a second (and sometimes third) chance to make a pleading that conforms with the requirements of Rule 9(b). *See, e.g., Brown*, 987 F.Supp. at 1159 (discussing the decision in *Brown v. North Central F.S. Inc.*, 173 F.R.D. 658, 665–72 (N.D.Iowa 1997), to allow the plaintiffs a third attempt at meeting the requirements for pleading fraud and refusing a fourth opportunity to replead when the pleadings still failed to meet the requirements of Rule 9(b)). This opportunity to amend is not, however, automatically granted to a party before the court dismisses outright the deficient fraud claims. *Id.*

In this case, Plaintiff did request leave to amend in its oral argument. The Court finds ABP will suffer little prejudice if a second opportunity to plead fraud is allowed. This action will continue on claims not in issue on Defendant's motion to dismiss, and Defendant will have further opportunities to challenge the adequacy of the repleaded fraud claim. The Court therefore grants Plaintiff's leave to amend Count II of Plaintiff's petition consistent with the requirements of Rule 9(b). Accordingly, Defendant's motion to dismiss as to Count II is denied.

## C. Motion to Dismiss as to Count V– Iowa Civil Rights Act (Disability Claim)

Nuss claims a violation of the Iowa Civil Rights Act ("ICRA") in her petition. She claims that ABP terminated her due to "(1) her gender, (2) in retaliation for her

voiced concerns about gender discrimination, and (3) because her father was disabled," thereby committing unlawful employment practices in violation of the ICRA, Iowa Code Chapter 216. As a result of her termination, Nuss suffered loss of wages and benefits related to that employment. She also claims she has suffered emotional distress from the unlawful practices committed by ABP and the resultant termination of her employment.

ABP seeks dismissal of the portion of this claim related to disability discrimination for failure to exhaust administrative remedies. Nuss did not include any mention of disability discrimination in the complaint she filed with the ICRC, a complaint for which she received a right-to-sue letter. Nuss maintains that the complaint as filed was sufficient to give notice to Defendant that a lawsuit may potentially be brought against it for *any* violations of the ICRA.

 Like Title VII, the ICRA requires plaintiffs to exhaust their administrative remedies prior to bringing suit. Iowa Code § 216.15(12), .16(1)(a), and .17 (2003). *See also Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir.2003) ("Before the federal courts may hear a discrimination claim, an employee must fully exhaust [his] administrative remedies."). "Administrative remedies are exhausted by the timely filing of a charge and the receipt of a right-to-sue letter." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir.2002); *see also Baker v. John Morrell & Co.*, 220

F.Supp.2d 1000, 1009 (N.D.Iowa 2002) (stating that "[i]n order to initiate a claim under the ICRC, a party must first timely file an administrative complaint with the ICRC and obtain a right-to-sue letter," and citing Iowa Code § 216). Only after a release has been given by the ICRC can a claimant commence suit. *See* Iowa Code § 216.16(3).

 In order for plaintiffs to have exhausted their administrative remedies under both Iowa and federal law, " 'the allegations of the judicial complaint [must be] like or reasonably related to the administrative charges that were timely brought.' " *Boge v. Ringland–Johnson–Crowley Co.*, 976 F.2d 448, 451 (8th Cir. 1992) (quoting *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir.1986)). A court will liberally construe the administrative charges in determining whether the claims asserted in legal proceedings are reasonably related to those in the administrative complaint. *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir.1988).

 Nuss filed a complaint with the ICRC within the 180 days as prescribed by law. *See* Iowa Code § 216.15(12). In the filed complaint, Nuss asserts she was discriminated against based on her gender and that she was fired in retaliation for her complaints of disparate treatment. There is no mention in this complaint of disability discrimination playing a role in her discharge from ABP.[4] Furthermore, Nuss only marked the boxes for "sex" and "retaliation" in response to the question,

---

4. In the section of the complaint to the ICRC that allowed the Plaintiff to fill in the particulars of her complaint, which specifically stated "Be sure to state why you feel you were discriminated against," Nuss states:

I was treated differently because of my gender. The other salesperson, a male, was given priority in all leads, for no other reason than my gender. One of the co-owners stated that it was "easier for a man to dress professionally than a woman."

The co-owner also made snide comments about "women and shopping." After I complained about this disparate treatment, I was fired. I was replaced by a male. Finally, the co-owners failed to pay all commissions and reimbursements due to me. This statement does not refer, either explicitly or through inference, to any disability discrimination or assert that this was one of the reasons she was fired.

"On what BASIS(ES) do you feel you have been discriminated against?" Nuss failed to mark the box for discrimination based on physical disability. She later amended her complaint with the EEOC to include a claim based on disability discrimination. Nuss has not amended her ICRC complaint to also include a charge of disability discrimination.

Even though Nuss did receive a right-to-sue letter from the ICRC, this letter was based solely on the allegations of gender discrimination and retaliation she made in her ICRC complaint. A right-to-sue letter was not issued on her claims of disability discrimination. In response to this, Plaintiff merely claims it is absurd for the Defendant to claim they would be unaware that Nuss' lawsuit would contain violations of the ICRA with the filing of *any* ICRC complaint.

In other words, Plaintiff argues that a defendant should be put on notice that a complaint filed with the ICRC could lead to a lawsuit based on any violation of the ICRA, regardless of whether that violation was actually alleged in the ICRC complaint or whether the ICRC had opportunity to investigate the alleged discrimination as part of its internal procedures prior to issuing the right-to-sue letter. This argument would provide a plaintiff with a blank check to bring a lawsuit for any ICRA violations through receipt of a right-to-sue letter. That is not the law.

In a similar case, *Russell v. TG Missouri Corp.*, a recent decision by the Eighth Circuit, the court upheld dismissal of the plaintiff's retaliation claim for failure to exhaust her administrative remedies. *Russell v. TG Missouri Corp.*, 340 F.3d 735, 747 (8th Cir.2003). In the complaints she filed with the EEOC and the Missouri

Commission on Human Rights ("MCHR"), Ms. Russell marked the boxes labeled "sex" and "disability" in response to what her alleged discrimination was based on. *Id.* at 739. She failed, however, to mark any other box, including the box for "retaliation". *Id.* Yet when Ms. Russell brought suit following receipt of a right-to-sue letter, she alleged gender discrimination, disability discrimination, *and* retaliation. *Id.* at 740.

■ Following dismissal of her retaliation claim, Ms. Russell argued that said claim is reasonably related to the substance of her allegations in the administrative charge. *Id.* at 747. "To satisfy the exhaustion requirement, the statement in question must provide sufficient notice of Russell's retaliation claim." *Id.* at 747 (citing *Wallin v. Minn. Dept. of Corr.*, 153 F.3d 681, 688 (8th Cir.1998)). The Eighth Circuit panel found her retaliation claim was not sufficiently related to the complaints alleged in her administrative complaints and was therefore properly dismissed and barred as a matter of law. *Id.* at 747. By failing to allege retaliation in her administrative complaint, Ms. Russell was prohibited from bringing an action in court based on this claim, regardless of whether the evidence supported an inference that she suffered retaliation for her actions. *Id.* at 747.

■ Thus, a claim of discrimination pursued by a plaintiff in the courts should be dismissed if it is not reasonably related to, or did not grow out of, the administrative complaint filed. *See, e.g., id.; Boge*, 976 F.2d at 451–52 (finding allegations made in complaint concerning August 1986 layoff was not reasonably related to October 1987 termination and so administrative remedies were not exhausted).[5] Further-

---

5. Cases from other district courts that have dealt with similar circumstances have also found administrative remedies had not been

exhausted and dismissal was therefore warranted. *See, e.g., Forbes v. State Univ. of N.Y. at Stony Brook*, 259 F.Supp.2d 227

more, equitable relief is not warranted where there is insufficient proof that the plaintiff attempted to amend the complaint or that the ICRC improperly refused or failed to amend the complaint. *Boge*, 976 F.2d at 452.

Nuss did not allege disability discrimination nor could this claim even be inferred from the complaint she filed with the ICRC. Therefore, this Court must determine whether Nuss' claim of disability discrimination is reasonably related to, or grows out of, the charges of gender discrimination and retaliation she alleges in the complaint she submitted to the ICRC. At least one court has found that disability discrimination was not reasonably related

(E.D.N.Y.2003) (finding employee's claim of discrimination based on marital status was not reasonably related to race and gender discrimination claims raised before EEOC, and so marital discrimination claim could not be maintained in subsequent lawsuit); *Johnson v. Milwaukee Sch. of Eng'g*, 258 F.Supp.2d 896 (E.D.Wis.2003) (finding employee could not maintain racial discrimination claim because it was not reasonably related to claims stated in EEOC charge); *Lewis v. Henderson*, 249 F.Supp.2d 958 (N.D.Ill.2003) (holding that employee's failure to mention race discrimination in EEOC complaint precluded racial discrimination claim in judicial proceedings when EEOC complaint only asserted claims of disability discrimination and retaliation); *Ulmer v. Dana Corp.*, 200 F.Supp.2d 804 (N.D.Ohio 2002) (finding claims other than retaliation claim brought under Title VII were barred for failure to exhaust administrative remedies absent explanation as to how those claims grew out of the charge filed with the EEOC); *Talbot v. U.S. Foodservice, Inc.*, 191 F.Supp.2d 637 (D.Md. 2002) (finding employee failed to exhaust administrative remedies as to claim of disability discrimination because employee failed to mark box next to this category, checking only the box marked for race, and there was no mention in the charge, including the factual narrative, that he was disabled); *Burgess v. N.Y. Stock Exchange*, 181 F.Supp.2d 337 (S.D.N.Y.2002) (holding newly alleged claims of age discrimination barred for failure to exhaust administrative remedies where administrative proceedings contained nothing beyond allegations of racial discrimination); *Galambos v. Fairbanks Scales*, 144 F.Supp.2d 1112 (E.D.Mo.2000) (holding that in order to exhaust administrative remedies entitling a claimant to bring an action under the ADA or the Missouri Human Rights Act, the claimant must give notice of *all* claims of discrimination

in the administrative complaint); *Malin v. Wal-Mart Stores, Inc.*, 1999 WL 1268377 (D.Kan.1999) (finding that administrative charge never referred to plaintiff suffering discrimination based on a disability and finding in addition that former employee's disability claim was not reasonably related to the charges she filed alleging retaliation and gender discrimination); *Sotolongo v. N.Y.C. Transit Auth.*, 63 F.Supp.2d 353 (S.D.N.Y.1999) (dismissing a disability discrimination claim as it had not been part of the administrative complaint and was not reasonably related to the claims of age and national origin discrimination contained in the administrative complaint); *Harris v. American Protective Services of N.Y., Inc.*, 1 F.Supp.2d 191 (W.D.N.Y.1998) (holding that because administrative complaint contained no reference to race or disability discrimination, and because these claims were not reasonably related to the claim of sex discrimination included in the administrative complaint, allowing the employee's claims based on race or disability discrimination to go forward would frustrate the purposes of the statutory exhaustion requirement); *Spurlock v. NYNEX*, 949 F.Supp. 1022 (W.D.N.Y. 1996) (holding employee had not properly exhausted his administrative remedies to be able to institute an action under Title I of the ADA because the only administrative complaint filed was limited to racial discrimination); *Siciliano v. Chicago Local 458-3M*, 946 F.Supp. 596 (N.D.Ill.1996) (dismissing with prejudice the plaintiff's age and disability discrimination claims counts because these were not included in the EEOC charge nor were they related to the charge of sex discrimination filed with the EEOC); *Dudley v. Wal-Mart Stores, Inc.*, 931 F.Supp. 773 (M.D.Ala.1996) (finding race discrimination claim beyond the scope of the EEOC charge complaining of sexual discrimination and was therefore barred).

to retaliation and gender discrimination. *See Malin v. Wal–Mart Stores, Inc.,* 1999 WL 1268377 (D.Kan.1999).

Likewise, this Court fails to see how Nuss' claim of disability discrimination is related to her claims of gender discrimination and retaliation. The complaint she filed with the ICRC does not in any way mention her relationship with someone that is disabled or the allegations that this in some way led to her termination from ABP. It is hard to imagine how a claim based on disparate treatment because of gender and retaliation for complaints made concerning this treatment could give notice to the defendant that the plaintiff also had a claim based on disability discrimination. Furthermore, by failing to address the claim of disability discrimination in the complaint she filed with the ICRC, Nuss deprives the ICRC of its ability to complete its statutory function of investigating claims of discrimination under Iowa Code § 216. To allow the disability claim to go forth would effectively usurp the ICRC of its investigative power and overall effectiveness. Thus, the portion of Plaintiff's Count V relating to disability discrimination must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because this claim is barred for failure to exhaust administrative remedies.

**D. Motion to Dismiss as to Count VII—Americans with Disabilities Act**

Nuss makes a claim in her petition for a violation of the Americans with Disabilities Act ("ADA"). She bases this claim on her association with someone with a disability, that person being her father, the disability being his diagnosis of cancer. Nuss claims she was fired in part because of her association with her father and her need for time off relating to her father's situation. As a result of her termination, Nuss suffered loss of wages and benefits related to that employment. She also claims she has suffered emotional distress from the unlawful practices committed by ABP and the resultant termination of her employment.

ABP seeks dismissal of this claim for failure to exhaust administrative remedies. Nuss did not include any mention of disability discrimination in the original complaint she filed with the EEOC. Plaintiff argues Defendant is fully aware of the facts giving rise to her termination. In an attempt to overcome any perceived deficiency in the complaint filed with the EEOC, Nuss has filed an additional complaint with the EEOC to amend her former complaint by adding disability discrimination to the charge. The Court notes that the amendment was made by the Plaintiff *only after* Defendant moved to dismiss based in part on her failure to allege disability discrimination in the complaints she filed with the EEOC and the ICRC.[6]

The Court incorporates the detailed discussion above related to failure to exhaust administrative remedies. As stated above, an employee must exhaust their administrative remedies prior to bringing suit for discrimination in the federal courts. *Burkett v. Glickman,* 327 F.3d 658, 660 (8th Cir.2003). If a plaintiff

---

**6.** The Court takes further note that the EEOC complaint attempting to amend the Plaintiff's earlier EEOC complaint was dated August 15, 2003. Plaintiff sought and received an extension until August 12, 2003, to file a resistance to Defendant's motion to dismiss. Plaintiff's resistance, filed August 14, 2003, referred to an attached Exhibit A as the Plaintiff's re-

newed EEOC complaint. Exhibit A was *not* attached to this filing and was not actually received by the Court until it was filed in an *errata* submission on August 26, 2003. Defendant's counsel states it was provided with Exhibit A, the Plaintiff's EEOC disability discrimination charge, on August 22, 2003.

brings an employment discrimination suit without first exhausting their administrative remedies, the district court may dismiss the lawsuit. *See* 42 U.S.C. § 2000e–5(f); *Brown v. Packaging Corp. of Am. Inc.*, 846 F.Supp. 592, 595 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–98, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). The requirement to exhaust administrative remedies does apply to Title I of the ADA. *See* 42 U.S.C. § 12117(a); *Randolph v. Rodgers*, 253 F.3d 342, 347 n. 8 (8th Cir.2001) ("Title VII of the Civil Rights Act of 1964 and Title I of the ADA both require exhaustion of administrative remedies"); *Dominguez v. Council Bluffs*, 974 F.Supp. 732, 735 (S.D.Iowa 1997) ("This court agrees that an employee making a claim under Title I of the ADA (which tracks the procedures of Title VII actions) is required to timely file an EEOC charge."). Exhaustion is accomplished by filing a charge within the time frame allowed by law,[7] and then receiving a right-to-sue letter. *Faibisch*, 304 F.3d at 803.

Under federal law, in order for a plaintiff to exhaust their administrative remedies, " 'the allegations of the judicial complaint [must be] like or reasonably related to the administrative charges that were timely brought.' " *Boge*, 976 F.2d at 451 (quoting *Anderson*, 807 F.2d at 148); *see also Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 631 (8th Cir.2000) (recognizing a claim is administratively exhausted if it is specified in the complaint, or grows out of, or is reasonably related to the allegations made in the administrative charge or complaint). Because many persons bringing charges to the EEOC are not legally trained, the charges found in the EEOC complaint must be liberally interpreted so as not to frustrate the purposes of the statute. *Cobb*, 850 F.2d at 359. "Accordingly, the sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination." *Id.* (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir.1985)) (internal quotation marks omitted).

 It is undisputed that Nuss failed to include any allegation or inference of discrimination based on her association with someone with a disability in the first complaint she filed with the EEOC. In addition, for the same reasons stated above in the discussion regarding Nuss' disability discrimination claim under the ICRA and even construing with all liberality the complaint encompassed in the first EEOC complaint,[8] the Court cannot find that Nuss' disability discrimination claim under the ADA is reasonably related to, or grows out of, the gender discrimination and retaliation claims she alleges in her original complaint to the EEOC.

 "In general, a Title VII [or ADA Title I] plaintiff cannot bring claims in a lawsuit that were not brought in his EEOC charge." *Hansboro v. Northwood Nursing Home, Inc.*, 832 F.Supp. 248, 251 (N.D.Ind.1993). Nuss did, however, file a renewed charge with the EEOC in an attempt to amend her former complaint. "[A] plaintiff must ordinarily amend the original EEOC charge in order to include new allegations of discrimination." *Schoolman v. UARCO, Inc.*, 1998 WL 774680, *2 (N.D.Ill.). As Nuss did do this, the Court must determine whether the

---

7. Because the Court grants Defendant's motion to dismiss as to this count, the Court need not determine at this time whether the amended complaint was timely filed with the EEOC.

8. While the Court does not have a copy of the original EEOC complaint attached to the pleadings, it is reasonable to assume the complaints set forth in this petition track those made in the complaint to the ICRC. *See infra* footnote 6.

second filed complaint, which does specifically allege disability discrimination, overcomes Defendant's motion to dismiss this count for failure to exhaust administrative remedies.

As previously stated, exhaustion of administrative remedies is accomplished by timely filing a charge *and* receiving a right-to-sue letter. *Faibisch,* 304 F.3d at 803. "[T]he completion of that two-step process [filing a claim and receipt of right-to-sue letter] constitutes exhaustion *only as to those allegations set forth in the EEOC charge* and those claims that are reasonably related to such allegations." *Id.* (emphasis added). In order to exhaust administrative remedies entitling a claimant to bring an action under the ADA, the claimant must give notice of *all* claims of discrimination in the administrative complaint. *Galambos,* 144 F.Supp.2d at 1124 (emphasis added).

In discussing the requirement—and the purpose behind the requirement—that a charge be brought to the EEOC prior to filing a lawsuit, one district court stated:

Civil complaints filed under Title VII may only encompass 'discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegation during the pendency of the case before the Commission.' The primary purpose of the EEOC charge is to provide notice to the respondent and to activate the voluntary compliance and conciliation functions of the EEOC. The charge triggers an investigation by the EEOC so, through a conciliation process, voluntary compliance may be obtained and discriminatory practices and policies eliminated. *Accordingly, the scope of the complaint is limited to the scope of the EEOC investigation.* Thus, the failure to assert a claim of discrimination in the EEOC charge or for it to be developed in the course of a reasonable EEOC investigation of that charge

prohibits the claim from later being brought in a civil suit.

*Clemmer v. Enron Corp.,* 882 F.Supp. 606, 610 (S.D.Tex.1995) (internal citations omitted) (emphasis added). The purpose behind requiring an EEOC charge be filed "would be frustrated if the filing of a general charge with the EEOC would open the possibility of subsequent judicial actions to any related conduct that took place in connection with the employment relationship." *Hansboro v. Northwood Nursing Home, Inc.,* 832 F.Supp. 248, 251–52 (N.D.Ind.1993) (recognizing, in addition, the liberal standard that the scope of a complaint properly includes any discrimination reasonably related to allegations made in an EEOC charge).

Nuss did not include a charge of disability discrimination in her original complaint filed with the EEOC. As a result, the right-to-sue letter she received never encompassed this claim. Therefore, she has not fully completed the two-step process in order to exhaust her administrative remedies as to the disability discrimination complaint under the ADA. Her attempt to amend her original complaint does not cure this, as this was done after she received the right-to-sue letter. The EEOC complaint did not give ABP notice of the disability discrimination claim under the ADA. Notice of this claim was not actually received until the lawsuit was filed and served on the Defendant. Thus, Plaintiff's Count VII must also be dismissed under Rule 12(b)(6) for failure to exhaust administrative remedies.

The Court may afford some equitable relief to Nuss as to the disability discrimination claim under the ADA. *See Boge,* 976 F.2d at 452 (finding equitable relief is *not* warranted where there is insufficient proof that plaintiff attempted to amend the complaint). *See also Schoolman v. UARCO, Inc.,* 1998 WL 774680 *2 (N.D.Ill.) ("the

scope requirement is not jurisdictional; it is a condition precedent *subject to equitable considerations.*") (citing *Zipes,* 455 U.S. at 393, 102 S.Ct. 1127 ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.")). Nuss does assert that if her ICRA and ADA claims are dismissed, it should be done without prejudice and with leave to amend. She states that because discovery has not been started and there is no scheduling order, "[o]bviously, a right-to-sue letter can be obtained with no prejudice whatsoever to ABP, and no inconvenience to the Court."[9] This may be possible as to the ADA claim because she did file a renewed complaint with the EEOC in an attempt to amend her original charge.

The court in *Flynn v. Morgan Guaranty Trust Co. of N.Y.* held it could not grant plaintiff's leave to amend the complaint to include a claim under Title VII until the plaintiff had received a right-to-sue letter from the EEOC. *Flynn v. Morgan Guar. Trust Co. of N.Y.,* 463 F.Supp. 676, 680 (E.D.N.Y.1979). The proper procedure was for the plaintiff to request leave to amend sometime within ninety days of receipt of such a letter. *Id.* " 'The EEOC charge, enlarged only by such EEOC investigation as reasonably proceeds therefrom, *fixed the scope of the charging party's subsequent right to institute a civil suit.*'" *Gerac–Ogashi v. Iberia Gen. Hosp.,* 952 F.Supp. 360, 363 (W.D.La.1996) (emphasis added) (quoting *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.,* 40 F.3d 698, 711–12 (5th Cir.1994)) (also citing 2 Larson, Employment Discrimination § 49.11(c)(1) at 9B–16 ("if an EEOC investigation has ac-tually been conducted, most courts hold that the scope of the complaint is limited to the actual scope of the investigation")). Thus, any further action on this claim will have to wait until Nuss receives a right-to-sue letter from the EEOC as to her disability discrimination claim.

## E. Motion to Dismiss as to Count VIII—Wrongful Discharge

Nuss' final claim against ABP is framed as a common law action, namely, wrongful discharge. Nuss alleges she was fired because she told the management of ABP that her father was terminally ill with cancer. Nuss states in her petition that firing an employee based on his or her association with someone with a disability or because of concern that said association will result in the employee taking a leave is against public policy in the state of Iowa. Nuss asserts her termination by ABP constituted an unlawful employment practice and wrongful discharge, thereby violating public policy under the law of Iowa. As a result of her termination, Nuss suffered loss of wages and benefits related to that employment. She also claims she has suffered emotional distress from the unlawful practices committed by ABP and the resultant termination of her employment.

■■■■ ABP contends that a common law claim for wrongful discharge has been preempted under the circumstances of this lawsuit. The Iowa Supreme Court has held "the ICRA . . . provides the exclusive remedy for particular conduct prohibited under that statute." *Channon v. United Parcel Serv., Inc.,* 629 N.W.2d 835, 857 (Iowa 2001) (citing *Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 38 (Iowa 1993)). "Preemption occurs unless the claims are separate and independent, and therefore

---

9. In addition, Nuss claims "ABP has not yet filed an Answer," when in fact, an Answer was filed by ABP on August 18, 2003.

incidental, causes of action." *Greenland,* 500 N.W.2d at 38. "If, under the facts of the case, success on the non-ICRA claims requires proof of discrimination, such claims are not separate and independent." *Channon,* 629 N.W.2d at 857. If the common law action requires proof of discrimination, they are not separate and independent and should be dismissed. *Id.See also Westin v. Mercy Med. Servs., Inc.,* 994 F.Supp. 1050, 1056–57 (N.D.Iowa 1998) (finding claim of tortious discharge in violation of public policy for discrimination based on age and disability was preempted because ICRA provided exclusive remedy for these claims); *Borschel v. Perry,* 512 N.W.2d 565, 567–68 (Iowa 1994) ("Our civil rights statute ... preempts an employee's claim that the discharge was in violation of public policy when the claim is premised on discriminatory acts."); *Grahek v. Voluntary Hosp. Coop. Ass'n of Iowa, Inc.,* 473 N.W.2d 31, 34–35 (Iowa 1991) (upholding summary judgment on count that asserts plaintiff was discharged because of age because this claim is indistinguishable from the civil rights claim filed with the Commission); *Vaughn v. Ag Processing, Inc.* 459 N.W.2d 627, 639 (Iowa 1990) (finding civil rights statute preempted claims of wrongful discharge, unfair employment practices, and termination in bad faith because all were actually based on religious discrimination); *Hamilton v. First Baptist Elderly Hous. Found.,* 436 N.W.2d 336, 341 (Iowa 1989) (concluding plaintiff's claim of wrongful discharge was premised on sex discrimination and was therefore preempted by the civil rights statute); *Northrup v. Farmland Indus., Inc.,* 372 N.W.2d 193, 196–97 (Iowa 1985) (finding sole remedies for discharge from employment based on disabilities was under the ICRA and any common law action for wrongful discharge could not be recognized).

▮ Defendant asserts that the "plain wording of the Plaintiff's own complaint establishes that wrongful discharge in violation of public policy claim is preempted by her flawed disability discrimination claim." Nuss does claim she was discriminated against based on her relationship with someone with a disability in her claim under the ICRA. She also alleges disability discrimination under the ADA. These claims based on disability discrimination echo her assertions under the wrongful discharge claim as she states that "firing an employee because of her association with someone with a disability, and/or because of concern that she may take leave" constitutes wrongful discharge.

Her claim based on wrongful discharge in violation of public policy is preempted by the ICRA. She had the opportunity to allege disability discrimination in the complaint she filed with the ICRC, and has in fact pleaded disability discrimination violative of the ICRA in her petition before this Court. In addition, Nuss has also brought a claim for disability discrimination under the ADA. To allow her to pursue wrongful discharge based on the identical alleged discrimination would give her three bites at the apple. *See Hamilton,* 436 N.W.2d at 341–42 (finding *Northrup* forbids giving plaintiff a second bite of the apple in the form of an common law action).

Plaintiff's surreply does point out, and counsel argued the point in oral hearing, that she brings her wrongful discharge claim on the twin bases that "[f]iring an employee because of her association with someone with a disability, *and/or because of the concern that she may take leave,* is clearly disfavored public policy under the laws of Iowa." The Court is unable to separate these claims, however, and finds that Nuss' claim that she was fired based on a fear of her taking leave is not independent of her disability discrimination claim. The Court hereby dismisses Plaintiff's Count VII pursuant to Rule 12(b)(6)

as preempted by the Plaintiff's claims under the ICRA and ADA.

### CONCLUSION

Based on the reasons set forth above, and based on the pleadings as they now stand and the arguments presented by counsel for the parties at hearing, and taking the Plaintiff's allegations as true as required in determination of a motion under Rule 12(b)(6), the Defendant's Motion to Dismiss (Clerk's No. 5) is hereby **granted** as to that portion of Count V that is related to the disability discrimination claim, and to all of Counts VII and VIII of the Plaintiff's Petition. Defendant's motion to dismiss as to Count II is **denied**, and the Court **grants** Plaintiff's requested leave to amend this count as made at the hearing. The counts that have been dismissed pursuant to Defendant's motion under Rule 12(b)(6) are dismissed without prejudice.

**IT IS SO ORDERED.**